IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JOE HAND PROMOTIONS, INC., *
                                             *
     Plaintiff,                   *
                                             *
     v.                             *
                                             *
CHESTER FLYNT, individually     *           6:15-cv-56
and d/b/a CHESTEFIELD'S BAR &   *
GRILL,                          *
                                             *
     Defendant.                 *
                                             *
                                             *

## ORDER

A man walks into a bar and says to the owner, "could you show the *Evans versus Henderson* fight?" The owner directs the bartender to call their television provider and ask how much the fight costs. The provider informs the bartender that the fight costs around $50 to view, which the owner agrees to pay. The owner shows the fight and he and his friends gather at a quiet bar, in a small Georgia town, to enjoy a night of mixed martial arts. Or so they affirm in this case.

To Plaintiff, the above transaction is no joke. Plaintiff contends that Defendant's conduct is but a single occurrence of a larger trend of nationwide "signal theft" that has caused a "serious erosion" in Plaintiff's sales. (Doc. 9-2 at 2). To punish and deter such conduct, Plaintiff filed this action

against Defendant seeking the maximum statutory damages and attorneys' fees under 47 U.S.C. §§ 553 and 605.

This case comes before the Court on Plaintiff's motion for default judgment. For the reasons discussed below, the Court **GRANTS IN PART** Plaintiff's motion.

### I. PROCEDURAL BACKGROUND

Plaintiff filed this suit against Defendant Chester Flynt individually and doing business as Chesterfield's Bar and Grill. The suit alleges that Defendant violated either 47 U.S.C. § 553 or § 605 by showing *UFC 161: Evans versus Henderson* ("the Program") at Chesterfield's on June 15, 2013. (Compl., Doc. 1).

Defendant never filed a responsive pleading and, upon Plaintiff's motion, the clerk entered default on July 21, 2015. (Doc. 8). Plaintiff then filed the present motion for entry of default judgment. (Doc. 9). On August 14th, Defendant appeared and, on August 17th, filed a brief in opposition to Plaintiff's motion, requested a damages hearing, and attached his affidavit and the affidavits of others present at Chesterfield's on June 15, 2013. (Doc. 12). In light of Defendant's affidavit, which admitted to ordering the Program via Dish Network, Plaintiff clarified in its reply brief that it was only pursuing liability under 47 U.S.C. § 605, which applies to unlawful interception of satellite transmissions. (Doc. 14 at 2-3). Plaintiff has therefore forfeited its § 553 claim. Plaintiff's motion for

default judgment on its claim under 47 U.S.C. § 605 is now ripe for the Court's decision.

**II. ANALYSIS**

**A. Requirements for Default Judgment**

Federal Rule of Civil Procedure 55(b) governs the Court's ability to grant a default judgment and vests the court with discretion to determine whether judgment should be entered. Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). "[A] Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id. There are three distinct matters that are essential for the entry of default judgment: (1) jurisdiction, (2) liability, and (3) damages. Pitts, 321 F. Supp. 2d at 1356.

With respect to the jurisdictional element, the Court has subject-matter jurisdiction under 28 U.S.C. § 1331. As for personal jurisdiction, by virtue of appearing and not

---

[1] In Bonner v. City of Prichard, 661 F.3d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the former Fifth Circuit's decisions prior to October 1, 1981.

challenging personal jurisdiction or service of process, Defendant is deemed to have consented to the Court's jurisdiction over him. See Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 854 (11th Cir. 2010) (citing Sanderford v. Prudential Ins. Co., 902 F.2d 897, 899 (11th Cir. 1990)).

The remaining issues of liability and damages are discussed below.

**B.    47 U.S.C. § 605**

**1. Liability under 47 U.S.C. § 605**

Under the default judgment standard, the Court must assess whether the alleged facts state a claim for liability under § 605. For purposes of liability, the Court will consider the factual allegations contained in the Complaint, which Defendant, by virtue of not appearing, is deemed to have admitted. Nishimatsu Constr. Co., 515 F.2d at 1206.

"To establish a violation of § 605, a plaintiff 'must establish that (1) the Defendants intercepted the program, (2) Defendants did not pay for the right to receive the transmission, and (3) Defendants displayed the program to patrons of their commercial establishment.'" Joe Hand Promotions, Inc. v. Neal, No. 14-cv-348-KD-C, 2015 WL 4039076 (S.D. Ala. July 2, 2015) (quoting Zuffa, LLC v. Al-Shaikh, No. 10-cv-00085-KD-C, 2011 WL 1539878, at *4 (S.D. Ala. April 21, 2011)).

4

Additionally, to hold Defendant individually liable for showing the Program at Chesterfield's, Plaintiff must also establish that Defendant had the "right and ability to supervise the violations, and that he had a strong financial interest in such activities." Joe Hand Promotions, Inc. v. Blanchard, No. 4:09-cv-100, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010)(quoting J & J Sports Prods., Inc. v. Arboleda, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009)).

The admitted facts establish the following: Plaintiff possessed the exclusive right to distribute the Program via closed circuit television and encrypted satellite signal to commercial establishments. (Compl. ¶ 14). As the Court understands the allegations, the Program was distributed to cable and satellite television providers via a satellite signal. (Id.) These providers, however, are not the relevant sub-licensees. Instead, they are a means of distribution to eventual sub-licensees. (Id. ¶ 16). The actual sub-licensees were "various entities in the State of Georgia" to whom Plaintiff granted the right to publicly show the Program. (Id. ¶ 15).

Defendant is an owner, officer, director, or shareholder of Chesterfield's Bar and Grill, located in Metter, Georgia, and he was "the individual with supervisory capacity and control over the activities occurring within [Chesterfield's] on June 15, 2013." (Id. ¶¶ 6-7, 9). Defendant or his agent or employee

5

showed the Program at Chesterfield's on June 15 without Plaintiff's authorization. (Id. ¶¶ 18-19).

Defendant, however, argued that he relied on Dish Network to charge him the correct price and did not know he violated any laws. (Doc. 12-1). "[Section 605], however, does not require a knowing violation." Kingvision Pay Per View, Ltd. v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1981). "[T]he fact remains that [Defendant] did not obtain the proper commercial exhibition rights from [Plaintiff], who held these rights exclusively." Joe Hand Promotions, Inc. v. Beech, No. 13-346-KD-M, 2015 WL 1823351 at *5 (S.D. Ala. April 21, 2015). Defendant is therefore liable under 47 U.S.C. § 605 for displaying the Program at Chesterfield's without authorization, and default judgment as to liability is **GRANTED**.

C. **Damages under 47 U.S.C. § 605**

Section 605 permits either actual or statutory damages, at the Plaintiff's election. 47 U.S.C. § 605(e)(3)(C)(i). In this case, Plaintiff elected to pursue statutory damages. (Compl. ¶ 22). With respect to statutory damages, 47 U.S.C. § 605(e)(3)(C)(i)(II) provides a minimum award of $1,000 and a maximum of $10,000 for each violation of § 605(a). Additionally, if the Court finds that a "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion

6

may increase the award of damages" up to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). But "where 'the violator was not aware and had no reason to believe that his acts constituted a violation' of this statute, an award of damages may be reduced 'to a sum of not less than $250.'" Joe Hand Promotions, Inc. v. Zani, 2013 WL 5526524, at *3 n.2 (N.D. Ill. Oct. 7, 2013) (quoting 47 U.S.C. § 605(e)(3)(C)(iii)). Reasonable attorneys' fees are also available under § 605(e)(3)(B)(iii).

Plaintiff seeks the maximum amounts of $10,000 in statutory damages, $100,000 in enhanced damages, and attorneys' fees. (Compl. ¶¶ 22-23). At the damages stage, the Court considers the admitted factual allegations and the affidavits filed during the briefing of this motion. The Court notes that Defendant requested a damages hearing, while Plaintiff argued that a hearing was unnecessary and would only increase Plaintiff's attorneys' fees. Based on evidentiary material provided by Plaintiff and not challenged by Defendant, the Court finds that the damages in this case are "for a sum which can by computation be made certain" without the need for a hearing. Fed. R. Civ. P. 55(b)(1); see Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

### 1. Statutory Damages

Plaintiff argues that the statutory maximum of $10,000 damages is warranted in this case. In support, Plaintiff cites district courts that have employed a multi-factor analysis to

7

determine the appropriate statutory damages award. (Doc. 9-2 at 7 (citing, e.g., Universal Sports Networks, Inc. v. Jimenez, No. C-02-2768-SC, 2002 WL 31109707, at *2 (N.D. Cal. Sept. 18, 2002))). In fashioning a statutory damages award, these courts have considered many factors including whether the defendant is a repeat offender and the extent of the financial gain. E.g., Jimenez, 2002 WL 31109707, at *2. Plaintiff urges the Court to adopt this framework and to make deterrence a central factor in its analysis. (Doc. 9-2 at 8).

But "other courts—particularly those within the Eleventh Circuit—have ordered defendants to pay, as statutory damages, the amount of the license fee that they would have been charged if they had actually been authorized to show the program." Joe Hand Promotions, Inc. v. Blanchard, No. 4:09-cv-100, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010). The Court finds that the approach taken by district courts in the Eleventh Circuit is appropriate in this case.

According to Joe Hand Jr., Plaintiff's president, Plaintiff used a rate card to determine the licensing fee for the Program by reference to the licensed establishment's maximum occupancy. (Doc. 9-2 Ex. 1). Additionally, Justin E. Jay, Plaintiff's investigator, estimated that Chesterfield's has a maximum capacity of 150 persons, which Defendant has not disputed. (Doc. 14, Ex. A). The rate card indicates that establishments with a maximum occupancy of 150 persons were charged $1,200 to

show the Program. (Doc. 9-2, ¶ 8; Doc. 9-2, Ex. 1). The Court therefore awards $1,200 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

**2. Enhanced Damages**

Plaintiff also seeks the statutory maximum of $100,000 in enhanced damages. Enhanced damages are available when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). To determine whether such a violation occurred, many courts look to factors relating to the commercial advantage or financial gain realized by defendants. See, e.g., J & J Sports Productions, Inc. v. Kraynak, No. 10-cv-2486, 2013 WL 228962, at *5 (M.D. Pa. Jan. 22, 2013 (noting courts consider "the number of televisions broadcasting the event, the existence of a cover charge, sale of food or drink, advertisement of the event in the defendants' bar, and a demonstration that defendants made more money or conducted additional business by illegally broadcasting the event").

Plaintiff, however, argues that such a test is "largely illogical and inconsistent with the very nature of the infringing activity," because "[c]ommercial signal pirates are looking to avoid, not attract, detection for their unlawful acts . . . ." (Doc. 9-2 at 9). For this reason, Plaintiff argues that this Court should follow other courts that awarded enhanced damages for the "act of interception and not the

9

promotion of the event." (Doc. 9-2 at 10 (citing <u>Entm't by J & J, Inc. v. Al-Waha Enters., Inc.</u>, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002))).

Plaintiff's preferred test all but reads "for purposes of direct or indirect commercial advantage or private financial gain" out of the statute. 47 U.S.C. § 605(e)(3)(C)(ii); see <u>J & J Sports Prods., Inc. v. Bolano</u>, No. 5:14-cv-03939-BLF, 2015 WL 4512322, at *4 (N.D. Cal. July 24, 2015) (noting the conjunctive nature of the statute). For this reason, the Court finds that a multi-factor analysis of the commercial purposes is the proper inquiry. See <u>Kraynak</u>, 2013 WL 228962, at *5.

Plaintiff argues that Defendant is deemed to have admitted that its conduct was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. Bare recitals of a claim's elements, however, are not well-pleaded factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009). Accordingly, Defendant has not admitted the Complaint's allegation that Defendant showed the Program "willfully and for purposes of direct or indirect commercial advantage or private financial gain." (Compl. ¶ 17). The Complaint also alternatively pleads multiple methods Defendant may have used to gain access to the Program, (<u>Id.</u> ¶ 18), but without the specificity necessary to show a willful violation. Moreover, Plaintiff's Complaint contains no allegations

10

concerning how Defendant advertised or otherwise promoted the Program.

The evidence in the record also supports Defendant's argument. In his affidavit, Defendant admitted that, at the request of "a couple of friends," who were also customers on this occasion, he instructed his employee to order the Program from Dish Network and stated that he relied on Dish Network to provide him the correct price for the fight. (Doc. 12-1). In its reply brief, Plaintiff accepts that Defendant ordered the program via Dish Network and argues that Defendant's conduct still constitutes a willful violation. (Doc. 14 at 4). In essence, Defendant has admitted that he called Dish Network and ordered and displayed the Program without Plaintiff's authorization. Absent evidence of direct or indirect commercial advantage or private financial gain through advertisements, drink specials, cover charges, or similar conduct, the Court concludes that enhanced damages are not warranted.

Plaintiff's own affidavits do not dislodge this conclusion. For instance, Plaintiff's investigator's affidavit acknowledges that Chesterfield's did not require a cover charge. (Doc. 14-1, Ex. A). Plaintiff also submitted a Facebook post by Chesterfield's. (Doc. 14-2, Ex. B). But the Facebook post does not indicate the date it was made or the particular U.F.C. fight being broadcast. And, although the Facebook post mentions drink specials, another post indicates the same specials were offered

11

on the previous day when presumably no U.F.C. fight was broadcast. (Id.) The drink specials appear to be a regular happy-hour special and not a promotion tied to a U.F.C. program.

This case is therefore lacking the additional evidence necessary to award enhanced damages. See J & J Sports Prods., Inc. v. Bolano, No. 5:14-cv-03939-BLF, 2015 WL 4512322, at *4 (N.D. Cal. July 24, 2015); Joe Hand Promotions, Inc. v. Plummer, No. 3:14-cv-00001, 2014 WL 3749148, at *3 (N.D. Miss. July 29, 2014); Joe Hand Promotions, Inc. v. Becchetti, No. 12-cv-1242, 2013 WL 4520638, at *5 (M.D. Pa. Aug. 26, 2013). Absent that, the Court finds that Defendant's conduct does not constitute a violation of 47 U.S.C. § 605(e)(3)(C)(i)(ll). The Court therefore **DENIES** Plaintiff's request for enhanced damages.

### 3. Attorneys' Fees

In addition to damages, Plaintiff seeks to recover reasonable attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's counsel filed a declaration as an exhibit to Plaintiff's motion. (Doc. 9 at 5-6; Declaration of Ronald D. Reemsnyder, Doc. 9-1). In it, counsel details the 4.6 hours he expended litigating this case, resulting in $1,545.00 in attorneys' fees. Plaintiff provided no evidence regarding costs. The Court has reviewed the affidavit and finds the fees reasonable for this case; therefore, the Court awards attorneys' fees in the amount of $1,545.00.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is **GRANTED IN PART** and **DENIED IN PART**. In particular, the Court **GRANTS** Plaintiff's motion for default judgment against Defendant with respect to liability. The Court **GRANTS** Plaintiff's request for statutory damages in the amount of $1,200.00 and attorneys' fees in the amount of $1,545.00. Plaintiff's request for enhanced damages is **DENIED**. Accordingly, the Court awards Plaintiff a total of $2,745.00. The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in favor of Plaintiff, terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 7th day of January, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA